* Curia per Sutherland, J.
The note upon which this suit is brought; is most clearly a continuation of the original nóte, given in April, 1816, when the loan was obtained by Parker. If that note, therefore, was given upon a usurious consideration, the taint which it imbibed attached to each of the series of securities which were subsequently taken, and affects and destroys the one in question.
It is admitted that Parker paid a premium of sevén per cent, upon1 the $800, over and above the legal interest. But it is contended on the part of the plaintiff, that the loan was made by Roswell Reed, and that the-plaintiff acted merely as the agent of Parker in effecting the loan.
The facts are these: Parker aplied to the plaintiff for a loan of $800. He told him he had not the money, but he thought he could procure it for him from his son-in-law, Roswell Reed; but that it was Roswell’s practice to charge a premium of seven per cent, beyond the legal interest upon all his loans. Parker agreed to pay the premium, if the money could be procured. The plaintiff then sends his own note for $800 to Roswell Reed, which Roswell procures to be discounted in the Bank'of Columbia, and delivers $744 of the proceeds to a special messenger sent by the plaintiff to receive it, who pays it to Stoddard Smith, the agent of Parker, who had previously agreed to forward it to him. The plaintiff, the day before, or on the morning of the same day, had received from Smith the note of Daniel Parker for $800 endorsed by Amasa Parker, under an agreement to return it, if the money could not be procured.
Upon this statement of facts, is there the slightest room to doubt that the loan was in truth made by the plaintiff, and not by Roswell Reed 1 The money was procured upon the note of the plaintiff. Parker’s note was delivered to the plaintiff, and never was in the possession of Roswell Reed; all the negotiation for the extension of the credit and the renewal of the'notes, were conducted by the plaintiff *681 solely, without any reference to Roswell. He was the person, therefore, who made the loan; and how, or where he procured the money, and what disposition he made of the premium; *whether he put it in his own pocket, or into the pocket of his son-in-law, is perfectly immaterial.
But the result will be the same if we consider the plaintiff as the agent of Roswell Reed in the transaction. The note was unquestionably given for the loan of $744. It contained a premium of $56 and was therefore usurious, to whomsoever it belonged, and would be void even in the hands of a bona fide holder : much more so in the hands of the plaintiff; who, if he purchased it from Roswell, and paid the face of it, purchased it with a fuE knowledge of the usury attached to it.
The only supposition upon which the usury can be got rid of is, that Parker’s note was not given for the loan. But was given in payment of the $800, which'the plaintiff had paid Roswell Reed. Every fact in the case is at war with such a supposition. The plaintiff did not pay Roswell Reed, until about a year after the loan was made. But Parker’s note was given either the day before or the very day that he received the money. It could not, therefore, have been given in satisfaction of an advance which had not then been made, (a)
In every point of view, I consider this one of the clearest *682 istration of it, would be brought into deserved dishonor. cases of usury thatwas ever presented to a court of justice an~t if the miserable contrivance which has been resorted to to screen this transaction from the operation of the statute, * sho~Jd prove effectual, either the law itself, or the admin-
Judgment for the defendant. (b)

 Mr. Ord, in- his valuable treatise on usury, (p. 64 to 69,) gives the most usual expedients by which usurers have attempted to evade the statute, but he has not adverted to the one presented by this case, which is now perhaps as frequent as any, viz: the lender placing himself in the light of the agent and surety of the borrower, and taking a counter security, as an indemnity for the money which he has paid, or is liable to pay under pretence of being surety. In these cases, if the state of the proof be such as to disclose the real lender, like this one of Reed v. Smith, there is, of course, no difficulty in making out the defence." The idea of usurers is most probably founded on a class of cases, collected in Ord, 100, which decide, that such a counter security is good, notwithstanding the original security should turn out to be usurious. But Mr. Ord holds, that, even in -such a case, the counter security is void, where the surety hnovis of the usury, as he must do where he is an agent in making the loan, and he thinks that Botkin’s casi in 3 Leon. 63, was determined upon this -distinction : and is, therefore reconcilable with the other cases, which it seems to contradict.

 If A. lend money to B. who puts it out to usurious interest, anil agrees "to pay to A. the same rate of interest which he is receiving upon A’s money, this is Usury between A. and B. aind an ’endorser of B’s note to A. may avail himself of the plea of usury. (Levy v. Gadsby, 3 Crunch, 180.) But where A. having given a usurious security, paid the amount thereof to B. who was surety for him, and B. in consequence of such payment, gave his own note to the creditor for the same amount; líéld, that "the latter note Was not usurious. (Scott v. Lewis, 2 Con. Rep. N. S. 132.),