DAVID KIMBALL *vs.* PROPRIETORS OF THE BOSTON ATHENÆUM.

A, in consideration of B's forbearance to collect of him a debt of $100,000, agreed to continue to pay interest thereon; and also to give B his notes to the amount of $40,000, to be disposed of by B at such discount and rates of interest as B should see fit, and the proceeds applied to B's use, and the notes taken up by B at maturity, and new notes given by A, to be disposed of in the same manner; and to pay B all sums beyond legal rates of interest, which B should pay in disposing of the notes. *Held*, that this agreement, in the absence of proof that it was intended as a cloak for usury, was not usurious.

BILL IN EQUITY to recover threefold the amount of certain moneys alleged to have been paid in violation of the usury laws. The bill alleged that the plaintiff, on the 14th of April 1848, being indebted to the defendants in the sum of $100,000, for which the defendants held his negotiable promissory note, bearing date the 1st of May 1846, payable on demand, with interest semi-annually, secured by mortgage of certain real estate in Boston; and being desirous that demand for payment of said note should be forborne, and that he should not be required to pay the same, for such length of time as would be consented to by the defendants; they proposed to forbear to require payment thereof, provided he would continue to pay the interest thereon semi-annually, and would also pay them all such sums of money as they might from time to time pay to others, beyond the legal rate of interest, for such sum, not exceeding $40,000 at any one time, as should be obtained by them on notes of the plaintiff: That money was then very difficult to be obtained on loans, except at rates of interest far exceeding the rate prescribed by law, which was well known to the plaintiff and defendants, and also that such difficulty was likely to continue, and said difficulty did in fact continue for a long period of time, and until after the 1st of April 1850, afterwards mentioned: That the plaintiff acceded to this proposal, in substance, and on said 14th of April 1848 an unlawful agreement was entered into between the plaintiff and defendants, whereby the plaintiff agreed to give the defendants his negotiable promissory notes for such sums of money as they might from time to time require

of him, the amount of which, outstanding and not due, not at any time to exceed the sum of $40,000, to be disposed of by the defendants in such manner and upon such terms as to discount and rates of interest as they might see fit, and the proceeds applied to their own use; and when said notes should arrive at maturity, the defendants to take up and pay the same, and, if they saw fit, call upon the plaintiff for other similar notes, to be again disposed of by them in the same manner; the plaintiff to continue to pay the interest on his note of $100,000, and further to pay the defendants such sums of money, beyond the rates of legal interest, as the defendants might pay to others in their disposition of the notes so to be given them; and the defendants to forbear to require of the plaintiff payment of his note of $100,000, so long as said notes should not have arrived at maturity: That, pursuant to this agreement, the plaintiff gave the defendants several notes, amounting in the whole to $40,000, payable in six months; that the plaintiff afterwards paid to the defendants, for their forbearance in requiring payment of note of $100,000 from the date to the maturity of said notes, the sum of $1,788.33, being the sum alleged by the defendants to have been paid by them to others for interest beyond the legal rate in the disposition made by them of said notes, and also the interest upon his note of $100,000 during the same period. The bill then alleged a delivery, in continuance of and upon the like agreement, of three other similar sets of notes, at successive periods, amounting respectively to $37,000, $40,000, and $27,000, and the payment by the plaintiff to the defendants of various sums for usurious interest alleged by the defendants to have been paid by them in disposing of two of said sets of notes, amounting to $2,228.25, and also interest for the same period upon his note for $100,000; and that after the defendants had disposed of said last set of notes, and before they became due, namely, on the 1st of April 1850, the defendants, in violation of their agreement, demanded payment of the note for $100,000, and, in default thereof, entered and took possession of said mortgaged real estate, and further, in pursuance of said unlawful agreement, notwithstanding said breach thereof, demanded and received of

the plaintiff $294.50, alleged by them to be the proportion, for the time said last notes had been running, of the usurious interest paid by them to others, and also interest on said note for $100,000 for the same time.

The defendants filed a general demurrer.

*W. H. Gardiner*, for the defendants. The *St.* of 1846, *c.* 199, § 2, on which this bill is founded, gives a right of action to " recover back threefold the amount of unlawful interest paid," only against the party who makes unlawful profit by receiving, for his own use and benefit, more than legal interest on the money lent. Comyn on Usury, 160. *Barclay* v. *Walmesley*, 4 East, 57. *Spurrier* v. *Mayoss*, 1 Ves. Jr. 532. *Thomas* v. *Cleaves*, 7 Mass. 361. *Bank of United States* v. *Waggener*, 9 Pet. 399. *Sts.* 1783, *c.* 55 ; 1825, *c.* 143 ; 1826, *c.* 27. Rev. Sts. *c.* 35, §§ 1–3. This statute does not purport to create a new offence, but only lessens the penalties upon one already well defined by law ; and being penal, as well as remedial, its general language is not to be enlarged so as to embrace new cases. *Wiley* v. *Yale*, 1 Met. 553. *Gray* v. *Bennett*, 3 Met. 529. *Commonwealth* v. *Macomber*, 3 Mass. 257. *Church* v. *Crocker*, 3 Mass. 21. *Mendon* v. *Worcester*, 10 Pick. 243. *Commonwealth* v. *Kimball*, 24 Pick. 370. *Bacon* v. *Robinson*, 7 Cush. 580. 1 Bl. Com. 88.

The statute does not apply to payments to a *bona fide* middle man, not intended as covers for usury, but for transmission to the real lender, or for reimbursement of moneys paid to the lender for the borrower's account, or by way of compensation for any intermediate service, so as to subject the known and acknowledged agent of either party, or of both parties, to the penalties, without the profits, of usury. No collateral interest in the transaction, without an actual lending of the money, or an actual participation in the direct profits of the usury, is within the statute. *Dagnall* v. *Wigley*, 11 East, 43. *Coster* v. *Dilworth*, 8 Cow. 299. *Campbell* v. *Shields*, 6 Leigh, 517. *Bank of Orleans* v. *Curtis*, 11 Met. 360. *Lambe* v. *Sizeman*, 1 Smith, 431. *Stevens* v. *Davis*, 3 Met. 211. *Shirley* v. *Spencer*, 4 Gilman, 601. *Richards* v. *Brown*, Cowp. 776. *Baretto* v. *Snowden*, 5 Wend. 181. Comyn

on Usury, 196–198. *Ford* v. *Keith*, 1 Mass. 139. *Brickett* v. *Minot*, 7 Met. 291.

The bill does not allege that any moneys, on which unlawful interest was paid, were *lent by the defendants;* nor that the unlawful interest was *paid to them* in the sense of the law, or otherwise than as a repayment of what they had themselves paid to the lenders, in behalf of the plaintiff, at his request, and as his agents; nor that the defendants received any money, for their own use and profit, as a consideration for their forbearance of their debt; nor that their statement of the facts constituting their claim to repayment was untrue; nor that their agreements and acts were a cover for their own usury. The transaction, as between these parties, was, in effect, a case of cross loans on different securities at legal interest.

The alleged breach of their agreement of forbearance on the principal debt does not entitle the plaintiff to maintain this bill, whatever other right of action it may give him for damages.

*S. Bartlett,* for the plaintiff. The case shows an agreement of the defendants for forbearance of a debt then due, for a consideration beyond the lawful interest accruing thereon. This consideration was an agreement to pay the defendants whatever they should pay by way of usury on notes, which stand just as if they were their own notes; for the plaintiff was made a party to them, merely to give them strength, and the defendants were to pay them at maturity. This agreement distinctly contemplated and provided for a violation of the statute, by usurious contracts to be made between the defendants and those who should discount the notes, and cannot therefore be upheld. The ground, that he only can be charged with usury who receives the profits, is untenable. *Commonwealth* v. *Frost,* 5 Mass. 53.

In *Stevens* v. *Davis,* 3 Met. 211, the agreement made by the debtor, in consideration of a forbearance, was, to pay a rate named, to be paid for a sum of money, borrowed by the creditor, at his request, of a party named. And that decision is not very satisfactory, as it is put upon the ground that the extra interest paid by the debtor was not paid on his debt to the creditor; but

so, in any case of forbearance, the money is paid for the forbear-
ance of the debt, and not on the debt. But however that may
be, that case should not be carried further; for if it is, it would
embrace all cases where the debtor agrees to pay what the cred
itor has to pay on money. The statute cannot be evaded by
treating the creditor, in his negotiations with third persons, as
constructively the agent of the debtor. See *Potkin's case,* 3
Leon. 63; *Dowell* v. *Vannoy,* 3 Dev. 43; *Levy* v. *Gadsby,* 3
Cranch, 180; *Reed* v. *Smith,* 9 Cow. 647.

THOMAS, J. The plaintiff was indebted to the defendants in
the sum of $100,000 on a note payable on demand, with inter-
est semi-annually, and secured by mortgage of his real estate.
The defendants wanted the money, and the plaintiff did not
want to pay it. An agreement was made to this effect: That
the plaintiff should give the defendants his negotiable promissory
notes to an amount not exceeding forty thousand dollars; that
the defendants should get the notes discounted, on such terms
and for such rates of interest as they saw fit, and apply the pro-
ceeds to their use. When the notes arrived at maturity, the
defendants were to take them up, and call upon the plaintiff, if
they saw fit, for other notes, to be disposed of in the same man-
ner. The plaintiff was to continue to pay the legal interest upon
his own note of $100,000 to the defendants, and to pay all sums
of money which the defendants had to pay to others in the ne-
gotiation and disposition of the notes of the plaintiff, beyond
the legal rates of interest.

Different sums were paid to the defendants under this arrange-
ment, and this bill is brought to recover back three times such
sums, on the ground that this arrangement was usurious and
within the provisions of the Rev. Sts. *c.* 35, §§ 1–4, and *St.* 1846,
*c.* 199. To this bill a general demurrer has been filed. And the
question is, Was this contract made by the plaintiff with the de-
fendants usurious, and may the plaintiff recover of them three-
fold the amount of the unlawful interest paid to the defendants?

It is to be observed that there is no allegation in the bill that
this arrangement was not made in good faith, or that it was in-
tended by the defendants as a cloak for usury. There is no alle-

gation that the defendants gained any profit or advantage by the arrangement. In fact, they must have lost. The plaintiff was to pay lawful interest on the $100,000 note, the defendants lawful interest upon the plaintiff's notes, and by this arrangement the defendants lost the interest on the difference between the face of the notes and the amount for which they were negotiated.

The gist of the offence of usury is the receiving of unlawful profit by the lender for his money lent. Such is the plain result of the statutes from 1641 to 1846. These statutes are the colony laws of 1641, Anc. Chart. 201 ; the provincial statutes of 5 W. & M. (1693), Anc. Chart. 257 ; 23 G. 2 (1750), Anc. Chart. 572 ; the *Sts.* of 1783, *c.* 55; 1825, *c.* 143 ; 1826, *c.* 27; Rev. Sts. *c.* 35, §§ 1–4 ; 1846, *c.* 199. In other words, the taking or retaining, by means of an unlawful bargain, of a greater rate of interest than the law allows, constitutes usury. When such greater rate of interest has been paid, the party paying the same may recover it back. And from whom ? Obviously from him to whom it has been paid—from the usurer.

The plaintiff paid no unlawful interest to the defendants. They received their six per cent. and no more. The bargain was no more than this : " Take these notes of mine, get them discounted at the best rates you can, and account with me for the proceeds. If there is a loss, I will sustain it." The defendants neither lent the money, nor participated in any manner, direct or indirect, in the profits of the usury. They were in effect the agents of the plaintiff for the transaction of the business, for his accommodation, and without compensation.

As such, we think the case is clearly within the rule established in *Stevens* v. *Davis,* 3 Met. 211. There the holder of a note, which the maker could not pay at maturity, proposed to borrow the money for ninety days, if the maker would engage to pay at that time ; but told the maker the loan would cost a certain sum, and that the maker ought to pay such sum or a part of it. The maker assented to the proposition, and afterwards paid the holder $7, part of the sum which the holder had paid in order to procure the loan. It was held, that if the representation was fairly and truly made, and the holder in fact paid

that sum or more to procure the loan, the taking of that sum was not usurious.

We have examined the cases cited by the learned counsel for the plaintiff, and do not perceive that they seriously conflict with the authority of *Stevens* v. *Davis.*

The case of *Commonweath* v. *Frost,* 5 Mass. 53, was considered by the court in *Stevens* v. *Davis.* That was an indictment under the statute of 1783, for taking unlawful interest. The money received was expressly for the use of the money lent. The defendant offered to prove that he acted as agent of a third party. But as he did not profess to act for another, but did profess to act on his own account, the court held he was liable to the forfeiture. If there is any variance between this case and that of *Stevens* v. *Davis,* the latter to this extent overrules the former. We certainly have no occasion to affirm the correctness of the decision in *Commonwealth* v. *Frost.*

The next case cited is that of *Potkin,* 3 Leon. 63. It may seem to be somewhat of a retracing of our steps to go back three centuries for the law of usury ; some progress we might hope had been made in this matter. But we have examined the case, for Mr. Sugden (now Lord St. Leonards) says Leonard's Reports were always in high estimation. Sugden on Powers (1st Amer. ed.) 17. The case was debt upon an obligation by Potkin. The defendant pleaded that he himself borrowed of one Watson a certain sum of money, paying for the forbearance thereof excessive usury, and that the plaintiff was bound with the defendant to the said Watson for the payment thereof; and that he himself by this obligation, upon which the action was brought, was bound to the plaintiff to save him harmless against the said Watson, &c. And because this was a counter bond for the payment of excessive usury, &c., it was holden by Manwood, " that the same was a good bar ; for here the plaintiff, when he was impleaded upon the principal bond, might have discharged himself upon this matter, and therefore the laches shall turn to his prejudice ; and therefore the issue was joined upon the excessive usury."

It is important to observe what was the law of usury when

this case was determined. The taking of interest was an offence at common law, at least for Christians. By *St.* 11 H. 7, *c.* 8, it was made a highly penal offence; persons lending money on usury were to forfeit half the amount; brokers of such bargains were to be set in the pillory, imprisoned half a year, and fined. By *St.* 37 H. 8, *c.* 9, repealing all former statutes against usury, it was provided that no person should take more than ten pounds for forbearance of a hundred for a whole year. By *St.* 5 & 6 Edw. 6, *c.* 20, it was enacted that no person should, by any means, lend or forbear any sum of money for any manner of usury or increase to be reserved or hoped for beyond the sum lent. This statute repealed that of 37 H. 8. By *St.* 13 Eliz. *c.* 8, the repealing statute of 5 & 6 Edw. 6 was repealed, and that of 37 H. 8 revived, and all bonds, contracts and assurances for the payment of money upon usury, contrary to *St.* 37 H. 8, were declared void. The taking of above ten per cent. was left a penal offence. There was also a provision that this last statute should be construed most strongly for the suppression of usury. This statute of Elizabeth was passed in 1570, and was in force when *Potkin's case* was determined. All obligations for excessive usury were absolutely void. The taking or reserving it was a penal offence. Potkin was sued upon a bond given to indemnify the plaintiff for his liability upon a bond void at law, and the giving of which was an offence. The court held the plaintiff ought to have discharged himself by pleading that the bond on which he was held was illegal and void. 2 Inst. 89. Com. Dig. Usury, A. Bac. Ab. Usury, B. Crabb's History of the Common Law, 433. 4 Burn's Eccl. Law, (7th ed.) 39. 1 Hawk. *c.* 82. Swinb. Wills, Pt. 2, § 16. On another familiar ground, the defendant would not be liable on a bond to indemnify the plaintiff for damages incurred in violation of the law.

The case of *Reed* v. *Smith*, 9 Cow. 647, was upon a verdict taken subject to the opinion of the court. It was a question of fact whether the plaintiff was the real lender. " Upon this state of facts," says Sutherland, J. " is there the slightest room to doubt that the loan was in fact made by the plaintiff ? "

The case of *Levy* v. *Gadsby*, 3 Cranch, 180, was simply this:

If A lends money to B, who puts it out at usurious interest, and agrees to pay to A the same rate of interest he is receiving, this is usury between A and B. Certainly it is; for A receives the entire benefit of the unlawful contract, the whole usury.

In *Dowell* v. *Vannoy*, 3 Dev. 43, a sheriff had collected money upon an execution, and neglected to pay it over, thereby subjecting himself to damages at the rate of twelve per cent. by way, not of interest, but of penalty, Having loaned the money to a third person at the rate of twelve per cent. interest, he was held guilty of usury. The sheriff's defence really was, that having violated the law in keeping the money from the execution creditor, he ought to be excused for violating the law by loaning it at usurious rates of interest. The court thought otherwise.

The alleged breach of the agreement on the part of the defendants cannot entitle the plaintiff to maintain this bill. Indeed, this was not claimed by counsel.  *Demurrer sustained.*