## PATRICK BURNS *v.* JOHN KELLEY.

1. INSTRUCTIONS TO JURY: MUST BE RELEVANT TO THE TESTIMONY.—An instruction to the jury, which has no relevancy to the testimony adduced on the trial, is erroneous.

2. SAME: MUST NOT ASSUME A FACT NOT PROVEN.—Instructions to the jury should not assume the existence of facts not established by the testimony.

3. PRINCIPAL AND AGENT: DISSENT OF PRINCIPAL TO UNAUTHORIZED ACT, WHEN AND TO WHOM COMMUNICATED.—The principal, when he is informed of the unauthorized act of his agent, is bound to repudiate the act and to communicate his dissent at as early a period as possible under the circumstances, to the party whom he intends to hold accountable.

4. SAME: CASE IN JUDGMENT.—Burns deposited with Cratin for safe keeping the note of Kelley. In 1863, while Burns was absent from the State in the army, Kelley, by fraudulent representations induced Cratin to receive payment of the note in "cotton money." Burns heard of the transaction in 1864, when the facts were hurriedly communicated to him, and when his stay at home was limited to a day. In July, 1865, Burns communicated to Kelley his dissent to the receipt of the "cotton money," and from the conversation that passed, it appeared that Kelley had heard of the dissatisfaction before. Held—In an action by Burns to recover of Kelley the value of the note, that, under the circumstances of the case, the dissent of Burns was communicated at as early a period as was reasonably possible.

5. SAME: SAME: RATIFICATION, CIRCUMSTANCES FROM WHICH PRESUMED.— The principal is not bound to express his dissatisfaction with the unauthorized act of his agent at the time the agent informs him of it, in order to entitle him to his action against the party dealing with the agent, nor is his failure to do so, a circumstance from which the jury are authorized to infer a ratification of the unauthorized act.

6. SAME: UNAUTHORIZED ACT WHEN BINDING.—The act of an agent, who exceeds his authority, is not binding on the principal, if he within a reasonable time express his dissatisfaction, and never voluntarily assents to or approves what was done.

ERROR to the Circuit Court of Madison county. Hon. J. A. P. Campbell, judge.

*F. Smith* for plaintiff in error.

*A. P. Hill* for defendant in error.

ELLETT, J., delivered the opinion of the court.

This was an action of trover, brought by Burns against Kelley, to recover a promissory note made by the latter to the former. The plea was, not guilty.

The plaintiff, Burns, testified on the trial, that the note was given for a loan of money, partly in silver coin, and partly in bank notes of equal value with gold and silver, and that it was distinctly agreed between the parties that it was to be repaid in specie; that in the summer of 1861, plaintiff volunteered in the Confederate army, and served during the whole war; that before leaving for Virginia, whither his regiment was sent, he deposited said note, and other papers, with John T. Cratin, for safe keeping, until he should return from the war, or call for the same, with no authority to collect it, but only to keep it; that coming home on furlough, in March, 1864, he learned that defendant had got possession, in June, 1863, of said note by paying to Cratin, the Mississippi cotton money for it. That he was dissatisfied with this payment, and never approved or assented to it. That while in the army, near Fredericksburg, he had received three letters from defendant, offering to pay the note in cotton money, to which he made no reply. That he cannot read or write. That plaintiff got home after the surrender, in July, 1865, and did not meet defendant until October, when defendant approached him and said: "I understand you are dissatisfied with what I did in paying your note;" to which plaintiff replied: "I am dissatisfied, and you know I have reason to be dissatisfied." He had not communicated to Kelley his dissent to the payment of the note until that time.

John T. Cratin testified to the deposit of the note with him for safe keeping, and that he had no authority to collect it. That on the first of June, 1863, defendant came to the house of witness, and offered to take up his note to Burns with cotton money. Witness said: "Perhaps I would not be doing right to

let you pay this note in cotton money;" to which defendant replied: "I have written to Burns, and it is all right." Witness, thereupon, knowing the friendship between the parties, and supposing that Burns had authorized the payment in cotton money, was thereby deceived by defendant to let him take up the note, principal and interest to·that date, with cotton money. That, being at home for a day, in March, 1864, he saw Burns, and hurriedly communicated to him what he had done, and that Burns said nothing, either of dissent or approval. Witness had previously turned the cotton money into Confederate paper, but did not communicate this to plaintiff, and, without such explanation, asked plaintiff what he should do with his Confederate money, then in his hands, and that plaintiff said: "Do with it as you do with your own; fund it, or otherwise dispose of it as you do with your own."

Kelley, the defendant, testified that he borrowed the money and gave the note as described. That in the spring of 1863, he wrote three letters to Burns, but got no answer. That he went to Cratin, in whose hands the note was, and said he wished to take up the note with cotton money, and that Cratin gave up the note and received the cotton money. That he told Cratin he had received no reply from Burns. This was all the testimony.

The following instructions were given on behalf of the defendant:

1. If the jury believe from the evidence, that Cratin was the general agent of Burns, then no private instructions given by Burns to Cratin can affect Kelley.

2. It is the duty of the principal, when he is informed of the unauthorized act of his agent, to repudiate the act, and communicate his dissent at as early a period as possible under the circumstances·of his situation. .

3. That if the jury believe that Burns directed his agent to fund the money, this is a circumstance which the jury may consider in determining the question whether Burns ratified the act of Cratin in receiving the money.

4. If the jury believe that Burns, when informed by Cratin

of the payment of the said note, expressed no dissatisfaction therewith, this is a circumstance for the jury to consider in determining the question of ratification.

The plaintiff asked the following instruction, which was refused, but was given after adding the words, " nor ratified his action in the matter," to wit:

If the jury believe from the evidence that Kelley induced Cratin to believe that he had authority to pay his note in cotton money, when in fact he had no such authority, and that the note was left with Cratin in deposit while Burns was absent in the army, not to collect, but only on deposit, without authority to collect the amount of the note, and that Burns expressed his dissatisfaction the first time he saw Kelley, and that he never voluntarily consented to, or approved, what Cratin had done, the law is for the plaintiff, and the jury will so find.

The jury having found for the defendant, a motion was made for a new trial on the following grounds :

1. Because the court erred in giving defendant's instructions, and in modifying the instruction asked by plaintiff.

2. Because the verdict was contrary to evidence.

3. Because of newly discovered evidence.

This motion was overruled, and the cause is brought up by the plaintiff on proper exceptions.

We think the first instruction on the part of the defendant was improperly given. There was no evidence that Cratin was the general agent of Burns, but, on the contrary, the proof was clear and uncontradicted, that he was only a bailee of the note for safe keeping, without any authority to receive payment.

The second instruction may be correct, if it is understood that the dissent to the act of the agent in a case like the present, is to be communicated to the other party, and not to the agent himself. The disaffirmance of the act should be notified to the party whom the principal intends to hold accountable.

The third instruction ought not to have been given. It assumes that there was proof of directions given by plaintiff to fund the cotton money received by Cratin from the defendant.

But, in fact, it appears that this direction was given only in regard to Confederate money which Cratin had in his hands, and that plaintiff did not then know that the cotton money received from defendant had been converted into Confederate money, and what he said on that subject could, therefore, have had no relation to the matter in controversy.

The fourth instruction was also erroneous. The plaintiff was not bound to express his dissatisfaction at the time when Cratin informed him of the payment of the note, in order to entitle himself to his action against the defendant; nor is his failure to do so a circumstance from which the jury could infer a ratification of the conduct of the defendant.

The instruction asked by the plaintiff appears to us to state correctly the law of the case, and ought to have been given as asked, without the modification. There was no evidence of ratification to be submitted to the jury.

We think the verdict of the jury was also against the evidence in the cause. It was not denied by the defendant, in his testimony, that the loan was of funds equivalent to specie, and that he had expressly agreed to repay it in coin. He wrote three letters to plaintiff asking permission to pay the note in cotton money, to which he received no reply. He then applied to the bailee of the note, and when he was met by hesitation as to the propriety of so doing, he gave the assurance that he had written to the plaintiff, and that it was all right. He does not deny that he gave this assurance, although he does say that he told Cratin that he had received no answer or reply. This conduct cannot be regarded in any other light than as a deliberate fraud on the rights of the plaintiff. The language and conduct of the defendant show that he knew Cratin was not the general agent of plaintiff, and had no authority to receive payment of the note in cotton money; otherwise, why write three letters to plaintiff to obtain his consent? and why assure Cratin that it was all right?

And if the plaintiff could have parted with his right of action to redress the wrong thus done him, by mere silence, such silence is satisfactorily accounted for. He was in the army in

Virginia, as a soldier. He never heard of the facts until March, 1864, when, being at home on a furlough, they were hurriedly and imperfectly communicated to him. He returned again in July, 1865, after the surrender, and the first time he saw Kelley he notified him of his dissatisfaction. But Kelley had heard of it before. He approached the plaintiff, and commenced the conversation by saying, "I understand you are dissatisfied with what I did in paying your note." Under "the circumstances of his situation," we think this dissent was communicated at as early a period as was reasonably possible, and that, in every aspect of the case, the verdict ought to have been for the plaintiff.

The judgment will be reversed, and the cause remanded for a new trial.