# WILLIS *v.* OREGON RAILWAY & NAVIGATION CO.

INSTRUCTION NOT BASED ON EVIDENCE.—Where an instruction is based upon a state of facts not warranted by the evidence, the manifest tendency of which is, from the special features of the case, to lead the jury to infer the existence of such facts, and thereby take an erroneous view of the case, it is ground for reversal, although such instruction may be correct as an abstract proposition of law.

IDEM—MASTER AND SERVANT—NEGLIGENCE.—In an action to enforce an employer's liability for an injury occasioned to an employee, through the employer's failure to exercise ordinary care in supplying suitable appliances for the work to be done, an instruction as to the liability of the defendant for not exercising ordinary care in the selection and employment of proper fellow servants is erroneous, where no question in regard to such liability is raised by the pleadings or evidence.

IDEM—COMMON EMPLOYMENT—VICE-PRINCIPAL.—A master is not liable to a servant for an injury occasioned by a fellow servant engaged in a common employment. He is liable, however, for an injury to a servant occasioned by the negligence of a vice-principal, to whom he has committed the substantial control of the business and the power to do all acts necessary to its conduct.

IDEM—THE FOREMAN OF A GANG OF LABORERS engaged in erecting a shed under the direction of a superior, is a fellow servant with the rest of such laborers, and if an injury happens to one of them through the negligence of such foreman, their principal is not liable.

APPEAL from Clackamas County.

*Dolph, Mallory, Bellinger and Simon,* for appellant.

*James R. Kelly,* for respondent.

By the Court, LORD, J.:

This was an action to recover damages for injuries received by the plaintiff while in the employ of the defendant as a laborer in the construction of a shed on the south side of the dry dock at Oregon City.

By his complaint, the plaintiff attributes his injuries to

the negligence of the defendant in not providing sound lumber for the scaffolding.

According to the bill of exceptions, the evidence tended to show, in substance, the following state of facts:

That the plaintiff was in the defendant's employ, at or about the dry dock at Oregon City, as a common laborer; that one Collins directed one Brown to take plaintiff, Barclay and Newman, and construct a shed on the top of the dry dock, to be made of rough lumber, and about seventy-five feet in length, and about ten feet wide, the walk-way of the dock being the floor of the shed, and consisted of several long posts, most of them about ten feet apart, and spiked at the foot to the sloping side of the dock. The back or south side of the dock had shorter posts, extending about seven feet above the top of the dock. A plate, or stringer, ran along from post to post on either side of the shed near the top of each post.

This plate was from one and a half to two and a half inches thick, and five or six inches wide. At the top of each post a notch or "gain" was cut to receive the plate, so as to leave the outside of the plate flush with the outside of the posts, and the upper edge flush with the top of the posts. The roof consisted of rough boards laid from the high plate on the north of the shed to the low plate on the south. On the morning of the accident, the plaintiff examined the long post at the northeast corner of the shed, and thinking it not securely fastened at the foot, went down into the dock and put more nails into the foot.

Pieces of lumber, six inches wide and two inches thick, called "spawls," were nailed against the sides of the long posts, three or four feet below their top. The other end of these pieces rested on the south plate. These pieces

were the supports for the scaffolding for the men to stand on when cutting the "gains" and fixing the plates.

While plaintiff was nailing the foot of the corner post, some one put a piece of lumber across the spawls, as if to be used as a scaffold. The plaintiff did not know, and from his position could not see, who put this lumber in its place.

Barclay and Brown had cut all the other "gains" except the one remaining to be cut in the corner post, and the stringer or plate had been put in the gains so cut, and spiked in some of them. In cutting the "gains" at the top of the posts, and spiking the plate upon them it was necessary for the person doing the work to stand on a scaffold or plank nineteen feet above the dry dock.

Brown had been appointed by Collins to superintend the construction of the shed, and had directed plaintiff to get up there and cut the gain in the corner post and fit the stringer in place. Plaintiff placed, as ordered, a prop or shore under the end of the stringer, which extended beyond the corner post, so as to raise the upper end of the stringer, which extended beyond the corner post, level with the top of the post, in order to make the place for the "gain."

Plaintiff then got upon the plank, which had been lain for a scaffold across the "spawls" and which was about six inches wide, two thick and several feet long. While plaintiff was on the scaffold, Collins coming along, directed him to knock the shore from under the end of the plate upon the top of the post so as to enable him to saw the post for the "gain." Plaintiff removed and undertook to lift the plate to the top of the post, when the piece of lumber on which he was standing broke and he fell. The lumber to build the shed was furnished by the foreman of Broughton's mill which was about three hundred yards distant from the dry dock.

Not having new lumber enough for that purpose, he furnished about a half dozen pieces of old lumber. Afterwards Brown went to the foreman of the mill and informed him that those pieces of lumber were unsound and rotten, and that he must furnish new lumber in their stead. Willis (the plaintiff) and another person carried the new lumber to the dock prior to the accident. To this plaintiff swears, except he swears that he and Brown carried the good lumber over the morning of the accident. The evidence further tended to show that the piece of lumber which broke and caused plaintiff's fall had a knot from an inch to an inch and a half in diameter through it from edge to edge, but that was not preceptible from the flat sides of the board.

The testimony was conflicting as to whether the defect was open to ordinary observation before the piece was broken.

The evidence also further tended to show that Brown, upon discovering the unsound condition of the lumber, reported its condition to Collins, who told him to throw it away and not to use it, to throw it overboard and go to the mills and make them furnish sound lumber in its stead; that the unsound pieces were thereupon thrown away and were replaced with new lumber brought from the mill by the plaintiff and Brown. It will be observed that the case made by the pleadings, and to which the proof as shown by the bill of exceptions was directed, was the alleged negligence of the defendant in not providing sound lumber for the scaffold.

It is not alleged, nor is it the object of the proof to show, that the defendant was guilty of any negligence in the selection or employment of unskillful co-servants, by reason of which the injury to the plaintiff was occasioned.

The contention is that it was the duty of the defendant

to provide a safe scaffold for the plaintiff to stand on while he was engaged in cutting the gain in the post. The principal of law invoked is that it is negligence in defendant not to exercise ordinary care in supplying suitable appliances for the work to be done. (Thompson on Neg., vol. 2, 946, 948, 971, 979; *Gibson* v. *Pacific R. R. Co.*, 46 Mo., 163; *Chicago R. Co.* v. *Sweet*, 45 Ill., 197.) But the error of which the defendant complains is not directed to that portion of the charge which instructs the jury as to the duty of the defendant in this regard; but to that portion which instructs the jury as to the duty of the defendant in the selection and employment of co-servants as being without the issue and unwarranted by the evidence, and therefore misleading and pregnant with mischief.

The court charged the jury that it was "the duty of the defendant that each of the co-servants it employs, is possessed of reasonable skill, so that one servant shall be protected from injury by the negligence or unskillfulness of another. And if an employer is careless or negligent in employing unskillful servants * * * and one of its servants suffers injury and damages from its carelessness, without any fault of his own, he can recover compensation for such injury from such negligence." This instruction presents to the jury a question not put in issue by the pleadings, nor warranted by the facts in evidence. It directs the attention of the jury as to the duty of the defendant in the selection and employment of its servants, and in effect charges that the defendant is liable, if it was careless or negligent in the employing unskillful servants. By the pleadings and proof, no question is intended to be raised as to the liability of the defendant for not exercising ordinary care in the selection and employment of proper fellow ser-

vants, yet the instruction lays it down that the plaintiff in such case can recover.

There is no doubt that it is the duty of the master to exercise reasonable care in the selection of fit servants for the duties for which they are engaged to perform, and that for a failure in this regard, if an injury happens to another servant, the master is liable to an action for damages suffered by such servant. This is elementary. As an abstract proposition of law, the instruction may be conceded to be unobjectionable, but the vice of it lies not alone in its inapplicability to the issues presented and the facts proved, but from the kindred nature of the subjects, in its manifest tendency to mislead the jury by authorizing them to find a liability upon a state of facts not warranted by the evidence. Besides, it diverts the attention of the jury from that which was, to that which was not in issue, and assumes the existence and asserts the liability of the defendant upon a state of facts wholly at variance with the evidence.

When an instruction is based upon a state of facts not warranted by the evidence, the manifest tendency of which is, from the special features of the case, to lead the jury to infer the existence of such facts and thereby take an erroneous view of the case, it is ground for reversal, although such instruction may be correct as an abstract proposition of law. (*Michigan Bank* v. *Eldred*, 9 Wall., 554; *Hastings* v. *St. Louis, etc., R. Co.*, 58 Mo., 302; *Harrison* v. *Cachelin*, 27 Mo., 26; *Hess* v. *Wilcox*, 58 Iowa, 380; *Manning* v. *Burlington C. R. and N. R. Co.*, 60 Iowa; *Howes S. Machine Co.* v. *Layman*, 88 Ill., 39; *Chicago and Alton R. Co.* v. *Mock*, 72 Ill., 141; *Thompson* v. *Shannon*, 9 Texas, 556; *Burns* v. *Kelty*, 41 Miss., 339; *Hays* v. *Hinds*, 28 Ind., 553; *Milton* v. *Rowland*, 11 Ala., 732; *Clark* v. *Dutcher*, 9 Cow., 647; Thompson on Charging Juries, secs.

62 and 63; Proffat on Jury Trials, secs. 312, 318.) The same objection applies to the next instruction excepted to.

The objection to the seventh instruction is that it undertakes to define, but incorrectly, as claimed, the responsibility of the defendant to one employee for the negligence of another standing as vice-principal. The adjudications to the effect that a master is not liable to a servant for an injury resulting from a fellow servant engaged in a common employment, present an almost unbroken line. (Thompson on Neg., Vol. 2, 967, 970, and note 2.) "The reason upon which this rule rests is," says Mr. Justice Mercer, in *Lehigh Valley Coal Co.* v. *Jones*, 86 Penn. St., 479, "that each one who enters upon the service of another, takes on himself all the ordinary risks of the employment in which he engages, and that the negligence of his fellow-workman, in the general course of his employment, are within the ordinary risks." But many cases present facts which renders it difficult to determine just what relations to each other and to their master, will constitute two persons fellow servants within the meaning of the rule.

The fact that the servant injured is inferior in grade and authority to the one by whose negligence the injury is caused, will make no difference. (Sherman and Redfield on Neg., sec. 100; *Blake* v. *Maine Central R. Co.*, 70 Me., 60; *McAndrews* v. *Burns*, 39 N. J. Law., 115; *Lehigh Valley Coal Co.* v. *Jones*, 86 Penn. St., 432; Thompson on Neg., Vol. 2, 1028, and notes.) To constitute one vice-principal, or superior servant, the master must have committed to him the substantial control of the business, and the power to do all acts necessary to its conduct. (*Peterson* v. *Whitebreast Coal Co.*, 50 Iowa, 673; *Cocoran* v. *Holbrook*, 59 N. Y., 517; *Lanning* v. *N. Y. R. Co.*, 49 N. Y., 521; Sherman and Redfield on Neg., sec. 102.) In *Mullan*

v. *Phila. and Southern Mail Steamship Co.*, 78 Penn. St., 25, the court say: "Where the master places the entire charge of his business, or a branch of it, in the hands of an agent, exercising no discretion, and no oversight of his own, the neglect of the agent of ordinary care in supplying and maintaining suitable instruments at cities for the work re- quired, is a breach of duty for which the master should be liable. The negligence of the agent with such power be- comes the negligence of the master." In *Gilmore* v. *N. P. R. Co.*, 1 West Coast Rep., 459, Mr. Justice Deady, as the result of his investigation of the authorities, laid down the rule, "Where the servant is authorized and required by his employment to furnish or provide suitable material or ap- pliances for the work in which his fellow servants are en- gaged, whether under his direction or otherwise, and one of them is injured by reason of his negligence or omission in this respect, the common master or employer is responsible in either case."

(See also *Louisville R. R. Co.* v. *Collins*, 2 Duv., 114; *Malone* v. *Hathaway*, 64 N. Y., 5; *Smith* v. *Oxford Iron Co.*, 13 Vroom, 467; *Lalor* v. *Chicago R. R. Co.*, 52 Ill., 401; *Cleveland, etc., R. Co.* v. *Keany*, 3 Ohio St., 201; *Beasa Stone Co.* v. *Kraft*, 31 Ohio St., 287; *Ford* v. *Fitchburg R. Co.*, 11 Mass., 214; *Hough* v. *R. Co.*, 100 U. S. R., 214.)

The point of contention in the cases has been as to when the negligence of the servant can be imputed to the master. Now, the objection of the defendant is that the instruction is misleading, in that it would include Brown as vice-prin- cipal, and thus impute his negligence to the defendant, and this is precisely what the plaintiff claims Brown was, and "not a fellow servant with the plaintiff." The evidence shows that Collins was the superintendent of the dry dock;

that he directed Brown to take plaintiff, Barclay and New-
man to construct a shed of rough lumber; that in building
the shed they all worked together in using the lumber, erect-
ing the scaffold, cutting the gains, and doing all things
necessary in the erection and construction of the shed.
There is nothing in the evidence tending to show that
Brown was charged with the duty of purchasing or selecting
the lumber to be used in the building of the shed or the
scaffold.

The lumber was furnished by the foreman of Broughton's
mill near by, and he testifies, not having new lumber enough,
he furnished about a half dozen pieces of old lumber.
When in the course of construction of the shed, Brown dis-
covered these unsound pieces, he reported the fact to the
superintendent, Collins, who ordered him to throw them
away and go to the mill and make them furnish sound lum-
ber instead, and the evidence shows that these old pieces
were thrown away and replaced by new lumber, brought by
the plaintiff and Brown from the mill. Why does he re-
port the fact to Collins? Evidently because he had no
authority to act in the premises and throw the old lumber
away and replace it with new without Collins' consent or
order.

This is inconsistent with the idea that the defendant had
placed the entire charge of the business in the hands of
Brown, exercising no discretion or oversight therein, where-
by Brown became authorized and required by his employ-
ment to furnish or provide suitable material or appliances
for the building of the shed—the work in which he and his
fellow servants were engaged. Being merely foreman of
the gang and leading off in the work is not sufficient to con-
stitute him vice-principal. In the construction of the shed,
and in doing all things necessary to effectuate that object,

including the erection of the scaffold, the evidence shows that they all worked together, so to speak, side by side engaged in the same common work and performing duties and services for the same general purpose. Nor was the work of that kind which required especially skilled labor, or the immediate presence of the superintendent at all times during its progress.

The driving of additional nails in the foot of the corner posts and in the spawls of the scaffold, to strengthen and make it more secure, all tend to show a common service, and that plaintiff had quite as much skill, authority and control in the construction of the shed as his co-laborers. In view of this, some other matters to which reference was made, need not be considered.

The judgment is reversed and a new trial ordered.