## BUSCH *v.* ROBINSON.

81 Pac. 237.

MASTER AND SERVANT—COMPLAINT—INFERENCE OF RISK ASSUMED.

1. In an action by a servant for personal injuries, a complaint showing that a board in a platform on which plaintiff was compelled to stand while feeding a mangle in a laundry had been negligently allowed to become smooth and broken, so that while in the performance of her duty she slipped and fell forward, whereby her hand was caught between the rollers of the machine, is not insufficient after verdict on the ground that plaintiff must from the facts stated necessarily have known of the defect, and thereby assumed the risk involved.

SURGEON'S FEES AS AN ELEMENT OF DAMAGE.

2. In a case where one has been injured so that the fingers have become webbed, the expense of a surgical operation to divide the fingers and the necessary hospital charges are all proper elements of damage.

INJURY TO SERVANT—EVIDENCE—QUESTION FOR JURY.

3. The evidence in this case on all the questions involved was sufficient to require its submission to the jury, so that the motion for a directed verdict was properly refused.

STRIKING OUT ANSWER OF WITNESS—HARMLESS ERROR.

4. A witness having answered a leading question that called for information already before the jury, the court properly ordered it stricken out, and even if such an order was error, it was manifestly harmless.

MASTER AND SERVANT—SUPERINTENDENT.

5. A person employed in a laundry to oversee a mangle and direct the movements of the other persons employed at the machine is not, as a matter of law, a foreman or superintendent, charged with the duty of keeping the machine and its surroundings in proper condition.

ACADEMIC INSTRUCTIONS.

6. Requested instructions on abstract or theoretical propositions, or on matters not testified to by witnesses, should not be given.

From Umatilla: WILLIAM R. ELLIS, Judge.

Statement by MR. CHIEF JUSTICE WOLVERTON.

This is an action for damages by Margaret Busch against John F. Robinson. The plaintiff, an employee of the defendant, while at work in a laundry, of which the latter was proprietor, feeding a mangle, slipped, and, falling forward, her right hand was caught between the rollers and seriously injured. She attributes the cause of the injury to the negligence of the defend-

ant, and charges in her complaint that he kept and maintained a platform in front of the mangle, upon which the employees feeding the same were obliged to stand; that he carelessly and negligently suffered said platform to be and become in a broken and defective condition, and negligently suffered the same to be and become slippery and worn, and to have a hole therein, and did then and there carelessly fail to provide a safe place for plaintiff to perform her work, of all of which defendant then and there had knowledge; that being in the performance of her duties as an employee of the defendant, and while standing on said platform and feeding said machine, plaintiff's foot slipped into a cavity in said platform, caused by said broken and defective condition, whereby she lost her balance and fell forward, and her hand was caught in the rollers and injured as above indicated. She gave testimony tending to show that she had supervisory control over the girls working about the mangle, there being four at the time, including herself (two in front, feeding, and two upon the opposite side, folding the fabrics as they came away) ; that her especial duty otherwise was to assist in folding, but that whenever occasion required, in furtherance of her duty in supervising the work she assisted in feeding as well; that on the evening of the accident the girls were working overtime, and plaintiff was in a hurry to get through, as she had been directed by the defendant, who had general superintendence about the laundry, to complete the work in hand before closing down; that, observing that one of the girls at the machine was not working as expeditiously as she should, plaintiff changed places with her, and directed her to fold while she fed the machine in her stead; that presently she missed the girl from her work, and, with a view to ascertaining her whereabouts, raised on her tiptoes, at the same time looking over the machine, when she was precipitated forward and her hand was drawn between the rollers and crushed and burned. Plaintiff testified that her "foot slipped in the knothole and she fell into the machine."

The plaintiff and a Mrs. Lewis, who was her principal witness, aside from herself, described the defect finally as being a knot in the board forming the platform, which stood about four

inches from the floor, from which the board was split on each
side for the distance of about a foot, and that the broken seg-
ment sprang down under the tread, permitting the foot to slip
into the space, which was about three inches in width.   They
each gave out as first impression that the defect was a split from
a knothole, but, when their attention was called explicitly to it,
they testified that it was a split from a knot yet remaining in the
board.   They further testified that from long use the board had
worn smooth and become slippery.   Plaintiff further testified
that her foot went into the opening to her instep; that she did
not know of the defect; that her attention had not been called to
it although she knew of the knot; that she could see the plat-
form, but did not remember the break being there; that she
supposed she could have seen it if her attention had been called
to it, but it never had; that she was seldom on that side of the
machine; that she had no recollection of seeing the break before
she was hurt; and that the place was shaded.   Mrs. Lewis tes-
tified that she was aware of the defect, and that it had existed
for some time, but that her attention was not called especially to
it until plaintiff was hurt.   The machine was four feet three or
six inches in height, and eight feet in length.   At the close of
the plaintiff's case there was a motion for nonsuit, which being
denied, the trial was completed, resulting in a judgment for
plaintiff, from which the defendant appeals.        AFFIRMED.

For appellant there was a brief over the names of *Carter &
Raley* and *Balleray & McCourt*, with an oral argument by *Mr.
John McCourt*.

For respondent there was a brief over the name of *Hailey &
Lowell*, with an oral argument by *Mr. Stephen Arthur Lowell*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

1. The first assignment of error relates to the overruling of a
demurrer to the complaint, and it is now urged that it is insuffi-
cient after verdict, in that it does not state that plaintiff was
without knowledge of the defective and broken board while
using the platform, or, stating the contention more precisely,
that having shown that the defendant suffered the platform

whereon she was to stand in doing her work to become and remain in a broken condition, without having stated more, it must be assumed that the defect was open and obvious, and, of course, that the plaintiff saw and observed it, and therefore had knowledge of it, and that, in proceeding to work on the platform with such knowledge, she voluntarily assumed the risk, and hence that the defendant is not liable upon the face of the complaint. An assumption of risk is characterized as a sort of estoppel against claiming damages for injuries received, which arises from contract, by engaging or consenting to work about a defective machine or with a defective appliance: Beach, Contrib. Neg. § 16. It is urged that it is inferable from the showing that the platform was broken or defective and had a hole in it that plaintiff had knowledge of the condition, but such a result does not necessarily follow. The manner of the break or defect is not further or specifically described. We may assume that plaintiff knew of the knothole or the knot, as some of the witnesses indicate it was, and yet she may not have known or realized the real extent or dangerous character of the defect. If the complaint had described the imperfection as the testimony tends to show it to have existed, it was rather of a latent character than one open and obvious to the sense of sight, and only made itself fully manifest under the tread of the foot. This serves to demonstrate that the inference of knowledge cannot be certainly deduced from the specifications of the defect, and after verdict we think the complaint is sufficient.

2. The next question in the order of trial arises upon the admission over objection of certain testimony of Dr. C. J. Smith. After describing the extent of the injury to the plaintiff's hand, and that there was a webbing of the fingers down to the middle joint, he testified that the cosmetic effect of the hand could be improved by an operation dividing the fingers again so that she could wear a glove; that, while it would probably not improve the usefulness of the hand, it would much improve its appearance; and that the reasonable charges of a surgeon for performing the operation would be about $100. He further testified, over objection, that it would be better for the plaintiff to go to a hospital during the operation and treatment, and that the

expense there would be two dollars a day for about 30 days. The objection to this testimony is that the expense attending the further treatment of plaintiff's hand to improve its appearance is not a proper element of damages for the jury's consideration. It would seem that the operation or further treatment and the expense attending it would be but the natural and probable result of the injury—as much so, almost, as it was necessary to employ a surgeon in the first instance to secure proper treatment for saving the hand, if possible. It was therefore within the rule for the measure of damages: 20 Am. & Eng. Enc. Law (2 ed.), 157.

3. The next question in such order arises upon the motion for a nonsuit. Much the same argument is advanced for defendant in support of the motion as in support of the assignment of error with relation to the demurrer, but it is supplemented by the further contention that plaintiff was guilty of contributory negligence. It was the duty of the defendant to furnish the plaintiff a safe place in which to work, and safe appliances to work with. This, as a principle of law obtaining between master and servant, is conceded. The contention involves three elements of inquiry: (1) Was the defect open and obvious? If not (2), did the plaintiff have knowledge of it, and continue in her employment with such knowledge? and (3) did the defendant have knowledge thereof, or should he have known of it if he had been reasonably diligent and cautious in observing the condition of the machine and its appliances, for the protection of his employees?

All these are matters of fact for the determination of the jury. The testimony of plaintiff would indicate that the defect was not open and obvious, as she had not observed it prior to the accident; and, as described by her and Mrs. Lewis, it was latent in character, rather than otherwise. Although Mrs. Lewis had taken note of it previously, her testimony, to say the least, was susceptible of different inferences in that relation, and was properly for the jury, and not for the court.

As it pertains to the negligence of the plaintiff, it is said she should not have been tiptoeing and peering about, looking for the girl who had deserted her post, but should have gone around

the machine to find her, but this is only matter of argument upon the testimony for the persuasion of the jury. It was certainly not negligence per se for her to do this in pursuance of her duty to supervise the work of those helping about the machine. If she could see the girl from where she stood, and call her back to her work, it would certainly have been as expedient for her to have done so as to have left her own work and gone after her. The discussion simply serves to demonstrate that the question was one of fact purely for the jury.

About the last element, suffice it to say that there was testimony submitted to the jury having a tendency to show that, if the defendant did not have actual knowledge of the defect, he could have known of it if he had taken proper precautionary measures. The legal principles applicable have been settled by the decisions of this court, and it is unnecessary that we re-enforce them by further discussion: *Wild* v. *Oregon Short Line Ry. Co.* 21 Or. 159 (27 Pac. 954) ; *Johnston* v. *Oregon Short Line Ry. Co.* 23 Or. 94 (31 Pac. 283) ; *Stager* v. *Troy Laundry Co.* 38 Or. 480 (63 Pac. 645, 53 L. R. A. 459) ; *Miller* v. *Inman,* 40 Or. 161 (66 Pac. 713) ; *Duff* v. *Willamette Iron Works,* 45 Or. 479 (78 Pac. 363, 17 Am. Neg. Rep. 121).

4. Another assignment of error relates to the striking out of an answer made by Miss Neil, a witness for the defendant. She testified without objection that she called on the plaintiff a few days after her injury, and talked with her about her hand; that she told her about the matter of the accident; that she did not remember the exact words plaintiff used about being hurt, but that she gave witness the impression that it was her carelessness that caused the accident that caused the injury to her hand. She was then asked the following question: "And the substance of her conversation was that the accident happened through her own carelessness?" An objection to the question being sustained, she was again asked: "Was that the substance of her conversation?" And she answered: "Yes, sir." It was this answer that the court struck out, and of which complaint is made. Two reasons exist why the action of the court was not prejudicial error: (1) The substance of the conversation had already gone to the jury without objection; and (2) she should have been

asked to give the conversation, or at least the substance of it, so that the manner of the question was obnoxious because leading.

Another exception was saved to a question propounded to Mrs. Millie Busch, on rebuttal, intended for the impeachment of J. C. Boothby, a witness for defendant, in one phase of his testimony. It was not well taken, however, as the proper ground for the question appears to have been laid.

5. Exceptions were taken to instructions numbered 1 to 7, inclusive, upon the ground that under the testimony they are abstract and without special application to the case. The reason urged why they are abstract is that the plaintiff was not an ordinary employee, but a departmental manager or superintendent, and was charged with the same knowledge, care and precaution as the general manager. This is a misapprehension of the status of the case. The plaintiff was given supervisory control about the machine. She says:

"I was head girl on the machine. * * It was my duty to see that the girls were all at work. * * He [Robinson], as a rule, was superintending the whole laundry, and has been all the time."

On cross-examination she continues:

"I was foreman of the machine. * * I was head lady. * * I was in charge of the whole thing and the six girls. * * My business was to look after the machine, to see that the work was done on it, and that the girls were working. * * It was my duty to see that the girls were employed."

But her control did not extend, as we infer, to keeping the machine in order or to supervising its management. That was left to the defendant himself, who retained general supervisory control over his entire laundry business. To say the least, here was matter of inquiry for the jury, and, being such, the instructions were not vulnerable to the objections.

It is also urged here that the defects complained of were open and obvious, but this we have found to be also a question for the jury.

6. The next assignment of error is relative to the instructions requested by defendant, namely:

"There is no rule of law which places a woman under any different circumstances than a man, with reference to the dan-

[35—46 Or.]

gers which she may be exposed to in working for an employer. She is subject to the same rules and conditions, and the same rule of law applies to her that applies to a man. It is her duty to observe and protect herself against dangers which are plainly obvious, or which ought to have been observed and noticed. If she suffers any injury by reason of her failure to observe the dangers which are in sight, she cannot recover."

As counsel concede, however, the trial court was not bound to give this instruction. It was requested, we gather, on account of the argument of counsel for plaintiff to the jury to the effect that a woman was not as thoughtful as a man, but was controlled and governed more by impulse. There was, however, no testimony in the case upon the subject, and the instruction was not vital to any question made on the trial.

Finding no error, the judgment of the trial court will be affirmed.　　　　　　　　　　　　　　　AFFIRMED.