Argued December 30, 1913, decided January 6, 1914.

# WASILJEFF *v.* HAWLEY PAPER CO.

### (137 Pac. 755.)

**Master and Servant—Injuries to Servant—Questions for Jury.**

1. Under Section 183, L. O. L., providing that a case not sufficient for the jury is one where, if the jury were to find a verdict for plaintiff, the court ought, if required, to set it aside, and Article VII, Section 3, as amended (Laws 1911, p. 7), providing that no fact tried by a jury shall be otherwise re-examined in any court unless it can affirmatively say that there is no evidence to support the verdict, evidence, in an action for injuries to a servant, *held* sufficient to go to the jury on the question of the master's negligence in failing to provide safe appliances to throw off belts from revolving pulleys.

**Trial—Reception of Evidence—Admission Without Objection.**

2. In an action for injuries to a servant, testimony that the only way to throw off a belt was with the hands, that there was nothing else there, that one could not use a stick, but that it could be arranged to throw it off with a lever, or something like that, admitted without objection or motion to strike out, is proper to be considered in passing on motions for nonsuit and instructed verdict.

**Master and Servant—Injuries to Servant—Employers' Liability Act.**

3. Employers' Liability Act (Laws 1911, c. 3), Section 1, providing that all dangerous machinery shall be securely protected to the fullest extent that the proper operation of the machinery permits, and generally all owners and persons having charge of any work involving danger to the employees or to the public shall use every precaution practicable, limited only by the necessity for preserving the efficiency of the structure, without regard to the additional cost, applies to an action for injuries to a servant in removing a belt from a moving pulley with his hands; no other appliance being provided.

**Appeal and Error—Presentation of Questions in Trial Court—Theory of Cause.**

4. In an action for injuries to a servant, where the only question presented on appeal is the sufficiency of the evidence to go to the jury and to justify the refusal of a nonsuit or instructed verdict, the fact that the trial court or counsel for plaintiff stated in the court below that the case was a common-law action does not preclude the Supreme Court from holding that it is within the employers' liability law (Laws 1911, c. 3).

**Master and Servant — Injuries to Servant — Assumption of Risk — Fellow-servants—Contributory Negligence.**

5. In an action for injuries to a servant within the employers' liability law, the common-law doctrines of assumption of risk, negligence of fellow-servants, and contributory negligence do not apply.

Master and Servant—Injuries to Servant—Employers' Liability Law.

6. Under employers' liability law (Laws 1911, p. 16), Section 1, requiring employers to use every practicable precaution for safety, without regard to cost, the fact that there is not sufficient room for belt shifters does not justify their absence; it being the employer's duty to make sufficient room.

Evidence—Sufficiency.

7. To support a verdict, there must be some legal evidence, tending to prove every material issue, on which the person in whose favor the verdict was rendered had the burden of proof.

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 1.    Statement by MR. JUSTICE RAMSEY.

This is an action by Victor Wasiljeff against the Hawley Pulp & Paper Company, a corporation, to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant. A verdict and a judgment in favor of the plaintiff for $2,065 were rendered in the court below.    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Rauch & Senn,* with an oral argument by *Mr. F. S. Senn.*

For respondent there was a brief over the name of *Messrs. Dimick & Dimick,* with an oral argument by *Mr. Walter A. Dimick.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

The defendant is a corporation, and engaged in the operation of a paper-mill and in the manufacture of pulp and paper in Clackamas County, and its principal office is at Oregon City. The plaintiff is a Russian, and he had been in this country only about two years and three months at the time of the injury.

Prior to January 2, 1912, the plaintiff had worked for the defendant at its said mill about three months. Only about one half of that time he had been engaged

in the place at which he was working when he was injured, as stated below. He had worked a while at a sawmill in the State of Washington, but he had had no experience in working about dangerous machinery until the last six weeks that he worked for the defendant. The plaintiff understands very little English, and he testified through an interpreter.

On January 2, 1912, the plaintiff was in the employ of the defendant and was working for it in that part of the defendant's said mill known as the chipper and barker room, and, in the course of his employment, it was his duty to operate two machines in said chipper and barker room. These machines were known among the employees of the defendant's said mill as a barker, and a cut-off saw. The said barker and chipper room was provided by the defendant with certain barker and chipping machinery, together with a cut-off saw, which was propelled by certain power, conveyed to said machines by belts, attached to said machines, and extending upward to certain revolving pulleys and shafts. Said pulleys and shafts were located about 18 feet above the main floor upon which said barker and chipper machine and saws were located; and, in order to stop the said barker and chipper machines and saw, it was necessary for the employees of the defendant to ascend from said main floor to an upper deck or platform composed of certain boards, a large part of which were loose, and to throw the said belts off from the said pulleys on said main shafts by means of the hands or the use of a stick of wood.

After stating the facts as set out *supra,* the complaint alleges: ''That it was the duty of said defendant to provide safe appliances for the purpose of adjusting said belts, and for the purpose of throwing off the belts from said revolving pulleys, so that the employees of said defendant would not be compelled to throw off the belts from revolving pulleys with their

hands or a stick of wood and thereby injure themselves, and that on or about the said 2d day of January, A. D. 1912, while plaintiff was so engaged in his said work in the operation of said barker machine and saw, as hereinbefore described, he was ordered by the foreman of said certain room, who was then in the employ of said defendant, to ascend to said upper floor deck and throw off the belt from said revolving pulleys, which operated said barker machine and saw, and while plaintiff was so performing his said work, at the request and order of said foreman, after he had ascended to the said deck above, and while throwing off the said belt from said revolving pulley, as he was ordered to do, as aforesaid, plaintiff's right arm was caught between said belt and revolving pulley on said shaft, without any fault of the plaintiff herein, and plaintiff's right arm was then and there crushed, bruised, wounded, mutilated and broken between the elbow and shoulder, and plaintiff was permanently injured thereby. That by reason of the carelessness and negligence of the said defendant in not providing safe and proper appliances for the use of said plaintiff in throwing off said belts from said revolving pulleys, and by reason of the injuries so received by the said plaintiff as hereinbefore alleged, plaintiff has been and now is permanently injured thereby, and now is and has been wholly incapacitated from performing any labor since the 2d day of January, A. D. 1912.''

The plaintiff was 34 years old when he was so injured and was earning $2 per day. He claims that he was wholly incapacitated to perform labor, and that in the future he will be obliged to work for much less than he would have been able to earn but for said injury. He claims damages in the sum of $10,000.

The defendant admitted that it is a corporation and engaged in the manufacture of paper, that plaintiff was employed by it on January 2, 1912, and that the

plaintiff operated the two machines as alleged in the complaint, but denied every other allegation of the complaint.    The defendant then pleaded that the plaintiff assumed the risk; that, if the plaintiff was injured through the negligence of anyone other than himself, he was injured through the negligence of his fellow-servants; and that the plaintiff was injured by his own negligence.    The plaintiff denied each of the allegations of the answer.

After the plaintiff's evidence in chief was in, the defendant filed a motion for a judgment of nonsuit on the ground that there was not sufficient evidence to be submitted to the jury, etc.    This motion was overruled. When all the evidence was in, the defendant moved the court to instruct the jury to return a verdict for the defendant.    This motion also was denied.

The defendant contends that the trial court erred in not allowing his motion for a judgment of nonsuit or for an instructed verdict.    There are no other assignments of error.

1. The plaintiff contends that it was the duty of the defendant to furnish him and the other employees with safe appliances with which to work, and that it was its duty to furnish the plaintiff and other employees safe appliances with which to throw off the belts from the revolving pulleys, so that they would not be compelled to throw off said belts from said pulleys with their hands or a stick and thereby injure themselves.    The plaintiff contends also that the defendant neglected to furnish him or the other employees with any safe appliances with which to throw off said belts, and that he was compelled to use his hands in throwing them off from said pulley, and, as a consequence thereof, the plaintiff's arm was caught between one of said belts and one of said pulleys and crushed, etc.

We can give only a brief summary of the important portions of the plaintiff's evidence.    The plaintiff's

evidence in chief was given by the plaintiff, Victor
Wasiljeff, Peter Schrotlin, Louie Rich, and Dr. Hugh
S. Mount.

The plaintiff testified in substance: That he was
working for the defendant at its paper-mill on January 2, 1912, and had been working there three months.
That he worked about six weeks loading cordwood
from cars, and the latter six weeks he worked in the
chipper and barker room. That on January 2, 1912,
about 5:25 o'clock P. M., the foreman of the room said
to the plaintiff and Louie Rich, "You go and take off
the belts"; and the plaintiff went and climbed the ladder, about 13 or 14 feet. When he climbed the ladder,
there were some boards lying lengthwise (forming the
"platform" on which he was when throwing off the
belt), and he had to go around under the shaft and
pulley, the big wheel, to get the belt. The boards on the
platform were loose. He had to watch, so that he
would not fall down. The belt caught him by the hand
and threw him in, and he did not remember any more.
When it caught his hand and broke his arm, he did not
remember any more. That Louie Rich called for help
and took him down. That the plaintiff had taken off
this belt four or five times before he was hurt. That
the foreman of the barker and chipper room ordered
him to go up the ladder and take off the belt. That
Louie Rich was on the platform at the same time taking
off another belt. That the defendant did not furnish
either him or Rich any instrument or device for taking
off the belts. He could not state how fast the pulleys
were revolving when he attempted to take off the belts.
That the pulleys never stopped, and that they could not
take the belts off excepting when the pulleys were
revolving. That sometimes the speed was slackened,
but the belts had to be taken off when the pulleys were
revolving. That no one ever showed or instructed him
how to take these belts off. He had seen others take

them off. That he never before worked around machinery. That he was raised in Russia and had been in this country two years and three months; was 34 at the time of the accident. He says his arm still pains him. He cannot sleep when he lies on the sore side. He cannot lift more than 15 pounds with his injured arm. He says his arm was twisted when it was caught between the belt and the pulley. Says he worked at Raymond, Washington, at a sawmill two or three months before he came to Portland. Says he cannot work since the accident.

Peter Schrotlin testified that he was working for the defendant on January 2, 1912, when the plaintiff was injured; knows defendant's mill and the machinery in the chipper and barker room; has worked in that room and with the same machines with which plaintiff worked. In going up to take off the belts, he says the steps are about two feet from the wall, and you have to climb upon the wall, and go underneath the big wheel, and then step over the next plank and come to the shaft again, and throw off the belts there. There are three belts and pulleys there. The barker wheel was about 15 feet from the wall. They generally shut the mill down a little (when the belts are to be thrown off), and you have to take the belt in your hand and throw it off. You cannot throw the belt off when they stop altogether. They cannot shut the mill down but a little. They have to run. When the mill is slowed down to slow these pulleys, it is running other machinery in the mill. There is only one way to throw off the belt, and that is with the hands. You could not use any sticks; "but they could fix it a different way so that a fellow could throw it off without his hands, have a kind of lever or something like that, or a pulley." No sticks were furnished with which to throw off the belts. Witness had thrown the belt off several times, but says the belts cannot be thrown off when the pulleys are just

moving. The pulleys are twelve-inch pulleys. The belts are four inches wide. There is no room up there to stand and throw off the belts. There are planks there with big holes, so you can fall through. There are three or four planks there. The last-named witness was working at the mill at the time of the injury.

Louie Rich, a German, was working in the same room with the plaintiff at the time of the injury and climbed up and threw off a belt at the time the plaintiff was injured. He testified in substance as follows: "He and plaintiff went up the ladder (to throw off the belts). We came out on this side (indicating), and then we had to go around the big pulley. There were two planks on that side (indicating) and two planks on this side (indicating), and we had to go around the side, and one plank crosswise. He took his belt off with his hands. There was nothing there with which to take off the belts. He used his hands. Witness is still working for the defendant. The plaintiff went up the same time that witness did to throw off belts. The foreman told them to go up. The plaintiff fell over, back in the corner. The witness and another person carried the plaintiff down (after he was hurt). That was the time when he got his arm broke. We went up together, and he (plaintiff) went on his side, and witness went on his side of the barker belt. Witness saw the plaintiff fall over back, and the belt went off. Plaintiff got off the belt and fell down back."

Dr. Hugh S. Mount had examined the plaintiff's injured arm several times, and he testified in substance: "That the plaintiff was badly injured. His arm and shoulder were the parts injured. His arm had been broken and was shrunken up. Certain muscles of his arm were atrophied. Paralysis had ruined part of his shoulder, and sensation in that part of his arm is gone. If he gets started just right he can lift 15 pounds, and that is all he can lift, and it hurts him to do that." The

doctor's evidence tended very strongly to prove that the plaintiff was badly injured, and that the injury was permanent.

It is clearly shown that the plaintiff was ordered by the foreman to climb the ladder and throw off the belt; that he obeyed the order and ascended the ladder, and, in throwing off the belt from a revolving pulley, his right arm was caught between the belt and the revolving pulley on the shaft and crushed and broken between the shoulder and the elbow, and he was permanently injured.   It is also shown by the evidence for the plaintiff that the defendant did not furnish any appliance or implement whatever for throwing off the belt, and that the plaintiff had to use his hands for that purpose.

The plaintiff and two other witnesses testify positively that no appliance or implement of any kind was furnished by the defendant for throwing off belts, and that the employees used their hands for that purpose. The evidence for the plaintiff shows also that the belts could not be thrown off excepting when the machinery was running, and that, when the belts were to be thrown off, the speed of the machinery was considerably reduced but not nearly stopped.

The evidence tends strongly to show that the revolving pulleys, the belts, and wheels, and shafts were dangerous machinery.   The plaintiff testified that he had no previous experience in working about machinery, and that he had been working at that work about six weeks, and that he had thrown off the belts only four or five times before he was injured.   He testified also that no one had instructed him as to the proper manner of throwing off the belts, but that he had seen others do it.

2. Peter Schrotlin, who had experience in working at the defendant's mill and in the work in which the plaintiff was engaged when he was hurt, speaking of throwing off the belts, testified: "That [with the

hands] is the only way you can throw it off, with the hands. There is nothing else there. You could not use any stick. But they could fix it a different way so a fellow could throw it off without the hands. Have a kind of a lever, or something like that.'' This evidence was given without objection, and there was no motion to strike it out. On the argument counsel for the appellant suggested that the evidence of Mr. Schrotlin was inadmissible, because he was not shown to be an ''expert,'' but, as no objection was made to his testimony, it is not necessary to decide whether it requires an expert to testify as to how the defendant could have arranged his machinery so that it would have been safe to his employees. It may be that this witness was an expert and fully qualified to testify on that subject. This evidence was relevant, and it was given without objection, and it was entitled to be considered by the jury, and also by the court, in passing on the motions for a judgment of nonsuit and for an instructed verdict.

In volume 9 of the Ency. of Evidence, pages 111, 112, that work says: ''Incompetent evidence which is introduced without objection becomes evidence in the particular case and must be treated as any other competent evidence, not only against the party failing to object, but as against the person introducing it. When evidence has been offered for a particular purpose, and no objection is made thereto, it must be treated as competent evidence for the purpose for which it was offered.'' The same volume on page 116 says: ''Inadmissible conclusions or opinions of witnesses, if not properly and seasonably objected to, become evidence in the case and should be given the weight to which they are entitled.''

There was evidence showing that the plaintiff was seriously injured while working for the defendant; that he was practically without experience in working

about dangerous machinery. There was evidence also
tending to prove that he was not instructed by anyone
as to the danger attending the throwing off of the belt.
There was also evidence tending to prove that the
defendant could have arranged his machinery, by put-
ting on a lever or something of that kind, so that the
plaintiff and other employees could have thrown off the
belts without taking hold of them with their hands and
without danger to them; and there was evidence also
of three witnesses that the defendant did not furnish
any kind of appliances for throwing off belts, and that
the employees had to take hold of the belts with
their hands, when they were in more or less rapid
motion, etc.

3. Counsel for the defendant contends that the Em-
ployers' Liability Act (Laws 1911, pp. 16, 17) does
not apply to this case; but we are unable to assent to
his contention. Section 1 of this act is prolix, and it is
not necessary to set it forth at length. After stating
*inter alia* that "all dangerous machinery shall be
securely covered and protected to the fullest extent
that the proper operation of the machinery permits,
and all shafts, wells, floor openings and similar places
of danger shall be inclosed," etc., it contains the fol-
lowing provision: " * * And generally, all owners,
contractors or subcontractors and other persons having
charge of, or responsible for, any work involving a risk
or danger to the employees or the public, shall use
every device, care and precaution which it is prac-
ticable to use for the protection and safety of life and
limb, limited only by the necessity for preserving the
efficiency of the structure, machine or other apparatus
or device, and without regard to the additional cost of
suitable material or safety appliance and devices."

The defendant had charge of the paper-mill and was
responsible for the work that it was doing when the
plaintiff was injured, and, according to the evidence,

this work did involve a risk or danger to the defendant's employees, including the plaintiff, and hence this case comes within the words and the intent of that law. This law is a remedial act, and it should be construed with reasonable liberality.

4. Counsel for the appellant contends also that the Employers' Liability Act should not be held to apply to this case, because, he says, that the counsel for the respondent, when the case was on trial, in the court below, said that this was a common-law action, and the court below regarded it as a case not within said act. The appellant did not except to any ruling of the court below in admitting or excluding evidence or in instructing the jury. He was satisfied with all of the trial court's rulings, excepting its refusal to grant a judgment of nonsuit or an instructed verdict.

The only question for decision here is whether there was sufficient evidence to be submitted to the jury. If there was, the motions for a nonsuit and for an instructed verdict were properly denied. In determining this question, we must base our decision on the law that applies to the case, without reference to what counsel or the court below may have considered to be the law of the case.

In 2 Standard Proc., pages 414, 415, the rule is stated thus: "Although an appellant in his allegations of error is limited upon appeal to the grounds or reason thus alleged below, an appellate court, however, is not limited in its decision to the grounds or reason given by the lower court. Thus an order granting a new trial may be sustained upon appeal, although upon an entirely different ground than alleged in the trial court. Likewise, in further example, rulings, excluding evidence and directing a verdict, will be upheld, if sustainable on any ground, regardless of the ground or theory acted upon by the court below."

If counsel for the plaintiff had induced the court below to make an erroneous ruling, and a judgment had been rendered against his client, and his client had appealed and had assigned as error the erroneous ruling of the court which his counsel had induced the court to make, under such circumstances, the plaintiff would be estopped by the acts of his counsel to insist that the case should be reversed for the error so committed.

In this case the counsel for the defendant claimed, in the court below, that the plaintiff's evidence was insufficient to be submitted to the jury, and the counsel for the plaintiff claimed that there was sufficient to go to the jury. The court below agreed with counsel for the plaintiff and denied the defendant's motions. The question for decision here is whether the court below decided correctly in denying said motions, and it is immaterial what the court below or the counsel for the parties said or thought on other questions.

The question here is: What is the law of this case, upon the facts contained in the record? The fact that counsel for the plaintiff or the trial court may have said, in the court below, that this case is a common-law action does not preclude this court's holding that it is within the Employers' Liability Act. The fact that counsel for the plaintiff said, in the court below, that this is a common-law action did not estop him in that court, nor does it in this court, to contend that the decision of the court below, holding that the plaintiff had made out a *prima facie* case for submission to the jury, was correct.

5. This case being within the Employers' Liability Act, the common-law doctrines of assumption of risk, negligence of fellow-servants, and contributory negligence do not apply: See *Dorn* v. *Clarke-Woodward Drug Co.,* 65 Or. 516 (133 Pac. 351), and Sections 5 and 6 of said act. In *Dorn* v. *Clarke-Woodward Drug Co.,*

Mr. Justice BURNETT says: "An absolute duty is imputed to the employer, for the violation of which he is penally, as well as civilly, liable. Under such circumstances, the servant does not assume the risk of injury."

Under the act referred to, it was the duty of the defendant to "use every device, care and precaution, which it is practicable to use, for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine, or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

The evidence tends to show that the defendant furnished no appliances with which to throw off the belts, and that its employees had to take hold of the belts with their hands, when the belts were moving with considerable rapidity, and that the plaintiff's arm was caught between the belt and a revolving pulley on the shaft and crushed. It is contended that the defendant should have provided a belt shifter for throwing off the belts, and that a failure to furnish some such device was negligence. One witness for the plaintiff testified, as shown, that this could have been done. This evidence on that point, with the other evidence produced by the plaintiff, was sufficient to require the case to be submitted to the jury.

6. On the argument it was contended by counsel for the appellant that there was not room to place belt shifters on the machinery, but, if there was not room enough for that purpose, the defendant should have made sufficient room. If belt shifters are a good device for preventing danger to employees and can be used without destroying the efficiency of the machinery, it was the defendant's duty to furnish them or some other appliances for the safety of his employees, without regard to the expense.

A case not sufficient to be submitted to the jury is one where it appears that, if the jury were to find a verdict for the plaintiff upon any or all of the issues to be tried, the court ought, if required, to set it aside for want of evidence to support it: Section 183, L. O. L.

Article VII, Section 3, of the Constitution provides *inter alia* that: "No fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." This provision of the Constitution is a mandate to this court which we must obey.

7. To support a verdict, there must be some legal evidence, tending to prove every material issue, upon which the person in whose favor the verdict was rendered had the burden of proof. In this case there are no errors of law vitiating the verdict, and it must stand, unless we can say affirmatively that there is no evidence to support it.

In *Perkins* v. *McCullough,* 36 Or. 147 (59 Pac. 182), the settled rule as to granting of judgments of nonsuit in this state is stated thus: "The rule is well settled in this state that if there be any evidence, however slight, fairly susceptible of an inference or presumption tending to establish a material allegation of the complaint (all the material allegations of the complaint), it is the duty of the court to deny the motion for a judgment of nonsuit and submit the question involved to the jury for determination." It is unnecessary to refer to the numerous cases decided by this court sustaining the foregoing citation. We are unable to say there is no evidence in this case to support the verdict.

The evidence for the defendant disputed some of the evidence for the plaintiff; but we think that there was sufficient evidence in favor of the plaintiff to require the case to be submitted to the jury, and that there was

no error in denying the motion for a judgment of nonsuit or for an instructed verdict.

The judgment of the court below is affirmed.

Affirmed.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Burnett concur.