Argued April 24, reversed June 16, 1914.

# OBERLIN v. OREGON-WASHINGTON R. & N. CO.*

(142 Pac. 554.)

**Commerce—Railroads.—Regulation—Injuries to Servant—Federal Employers' Liability Act.**

1. An action for an injury to a brakeman in a switching crew, whose general duties were to use a locomotive in moving indiscriminately cars used in local traffic and those carrying goods destined to and received from other states, the injury having occurred when plaintiff was coupling the locomotive to·a private car used wholly within the state, is within the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, U. S. Comp. Stats. Supp. 1911, p. 1322), relating to the liability of common carriers engaged in commerce between any of the several states tq persons injured in their employ.

**Master and Servant—Injuries to Servant—Assumption of Risk—Federal Employers' Liability Act.**

2. Under the Federal Employers' Liability Act (Act April 22, 1908, c. 149, § 4, 35 Stat. 66, U. S. Comp. Stats. Supp. 1911, p. 1323), providing that in any action under the act the employee shall not be held to have assumed the risks of his employment where the violation by the common carrier of any statute enacted for the safety of the employees contributed· to the injury or death of the employee, the defense of assumption of risk is not eliminated except in cases prescribed by the statute itself, and the protective statutes referred to in the section are federal statutes only.

[As to employees entitled to protection under Federal Employers' Liability Act, see note in Ann. Cas. 1914C, 164.]

**Commerce—Power to Regulate—Effect of Federal Statute.**

3. The Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, U. S. Comp. Stats. Supp. 1911, p. 1322), relating to liability of common carriers engaged in interstate commerce to employees, is exclusive of all state legislation on the same subject.

**Master and Servant—Injuries to Servant—Actions—Pleading.**

4. An answer in an action under the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, U. S. Comp. Stats. Supp. 1911, p. 1322), alleging the promulgation of rules by defendant governing its employees and violation thereof by plaintiff, does not show assumption of risk, since that defense relates to the inherent and usual hazards of the occupation, and disregard of rules is referable rather to negligence.

[As to pleading Federal Employers' Liability Act, see note in Ann. Cas. 1914C, 171.]

---

*On the constitutionality, application and effect of the Federal Employers' Liability Act, see note in 47 L. R. A. (N. S.) 38.

For the servant's assumption of risk of master's breach of statutory duty, see notes in 6 L. R. A. (N. S.) 981; 19 L. R. A. (N. S.) 646; 22 L. R. A. (N. S.) 634; 33 L. R. A. (N. S.) 646; 42 L. R. A. (N. S.) 1229, and 49 L. R. A. (N. S.) 471.   REPORTER.

Trial—Instructions—Applicability to Case.

5. In an action for injuries to a servant, where the complaint did not allege that defendant was negligent in failing to inspect, an instruction on that issue was error.

Trial—Instructions—Province of Court and Jury—Questions of Law.

6. In an action for injury to a servant, it is error to submit to the jury the question whether the common law or the employers' liability law (Act April 22, 1908, c. 149, 35 Stat. 65, U. S. Comp. Stats. Supp. 1911, p. 1322), should apply to the issue in question.

[As to jury as judges of the law as well as the facts, see notes in 33 Am. Rep. 791; 42 Am. St. Rep. 290.]

From Multnomah: Henry E. McGinn, Judge.

Department 2.    Statement by Mr. Justice Burnett.

This is an action by Frank R. Oberlin against the Oregon-Washington Railroad & Navigation Company, brought under the act of Congress of April 22, 1908 (35 U. S. Stat. 65, c. 149), commonly known as the Federal Employers' Liability Act. The substance of the complaint is that the defendant at all the times mentioned was a railway common carrier engaged in interstate commerce between the States of Oregon and Washington and other states, and the plaintiff was in its employ in the prosecution of that business. He charges that the defendant used, in its switching service connected with its general transaction of interstate commerce, a steam locomotive which was defective because the throttle thereof was too short, by reason of which the engineer could not, at the same time, control it and look out for signals; further, that the coupling appliance connected with the engine, and its tender was so short that there was not sufficient clear space between the tender and a car to be coupled; that the tender had a square tank instead of a sloping one, and that, taken all together, the locomotive and its equipments were so insufficient for the purpose for which they were designed, all of which was known to the defendant, the mere use of them was negligence on

its part. As a further element of his grievance, the plaintiff alleges, in substance, that the defendant and its employees in charge of the locomotive so negligently and violently operated it as to run down upon the plaintiff while he was engaged in coupling the engine to a car that they crushed him between the tender and the car, although he signaled to them to stop, which failure to stop was the direct result of the engineer not being able to at once control the engine and observe the signal.

The answer traverses the complaint in material particulars, especially upon the matter of the accident happening in the prosecution of interstate commerce. It alleges, in substance, that the plaintiff willfully violated certain rules established by the defendant, and of which he had knowledge, forbidding its employees from going between cars in motion to couple or uncouple them, and from riding on the front or rear end of an engine or of a car during the process of coupling, and that the plaintiff's injuries happened because of his disobedience of those regulations. It also urged that the plaintiff was an experienced railroad man with knowledge of the requirements and dangers of the vocation, so that he assumed the risk of his employment, with the consequence that the defendant was not to blame for the happening of the accident; the same being one of the ordinary results of the service in which he was engaged.

The new matter of the answer was denied by the reply. A jury trial resulted in a verdict for the plaintiff, and from the consequent judgment the defendant appeals.                                              REVERSED.

For appellant there was a brief over the names of Mr. Charles E. Cochran and Mr. Arthur C. Spencer, with an oral argument by Mr. Cochran.

For respondent there was a brief over the name of *Messrs. Sinnott & Adams,* with an oral argument by *Mr. Loring K. Adams.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The principal question to be determined is whether or not the case is one to be controlled by the Federal Employers' Liability Act. That statute provides:

"That every common carrier by railroad while engaging in commerce between any of the several states * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

As a matter of pleading the complaint is sufficient to show character and relationship of both the plaintiff and the defendant to which the act in question applies. As a matter of fact it appears that the plaintiff was a brakeman in a switching crew in the Portland yards of the defendant. There is testimony tending to show that the general duties of the crew were to use the locomotive in question in moving indiscriminately not only cars used in local traffic, but also those used by the defendant in carrying goods destined to and received from other states of the Union. The accident under consideration, it is true, occurred at the particular moment the plaintiff was engaged in coupling the locomotive to a private car used by the superintendent of a division wholly within the State of Oregon, and as the plaintiff began his night's work, that

being the first car which the crew was directed to move. It happened, however, on the tracks constantly used by the defendant in handling interstate as well as intrastate commerce, and it was in connection with a locomotive used in both those kinds of traffic. Hence there was testimony which the jury was authorized to consider in arriving at the conclusion that there was a natural connection between the employment of the plaintiff and the interstate commerce feature of the defendant's business. As stated by Mr. Justice BEAN in *Montgomery* v. *Southern Pac. Co.*, 64 Or. 597 (131 Pac. 507, 47 L. R. A. (N. S.) 137):

"It would be practically impossible to name any servant of an interstate road who is employed exclusively in the furtherance of purely interstate traffic. All employees who participate in the maintenance or operation of the instrumentalities for the general use of the road, thereby enhancing the utility of such commerce, are necessarily engaged in the work of interstate commerce, within the meaning of the act. The fact that a portion of plaintiff's work pertained to local traffic would not change the character of his labor in the performance of acts reasonably proximate and essential to the moving of interstate freight and in assistance thereof."

In *Mondou* v. *New York, N. H. & H. R. R. Co.*, 223 U. S. 1 (56 L. Ed. 327, 32 Sup. Ct. Rep. 169, 38 L. R. A. (N. S.) 44), the Supreme Court of the United States said:

"But, of course, it [the act in question] does not extend to any matter or thing which does not have a real or substantial relation to some part of such commerce. * * 'Therefore Congress may legislate about the agents and instruments of interstate commerce, and about the conditions under which those agents and instruments perform the work of interstate commerce, whenever such legislation bears, or in the exercise of a fair legislative discretion can be deemed to bear,

upon the reliability or promptness or economy or security or utility of the Interstate Commerce Act.' * * It is not a valid objection that the act embraces instances where the casual negligence is that of an employee engaged in intrastate commerce; for such negligence, when operating injuriously upon an employee engaged in interstate commerce, has the same effect upon that commerce as if the negligent employee were also engaged therein."

The test indicated by this utterance of the United States Supreme Court in determining whether the act in question is subject to the federal legislation upon the subject is whether or not the operation of interstate commerce by the defendant is affected by the injury to the employee. Bearing in mind that the crew of which the plaintiff was a member was engaged habitually with the locomotive in question in handling cars of all kinds coming into the yard of the defendant, whether interstate or intrastate, without distinction, it must be apparent that the efficiency of the defendant's force of employees engaged in interstate commerce was appreciably impaired by the injury happening to the plaintiff. Under the circumstances the two kinds of trade were so intimately and inseparably commingled that it is impracticable to say that at one moment the plaintiff is engaged in one kind of traffic and at the next in the other. The statute is remedial in its nature and is to be construed liberally.

In *Pedersen* v. *Delaware, Lackawanna & W. R. R. Co.,* 229 U. S. 146 (57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, Ann. Cas. 1914C, 153), an employee of an interstate railway carrier was killed while carrying a sack of rivets to be used on the morrow in repairing a bridge over which regularly passed both kinds of commerce; and, although he was killed by a train operating wholly within the state where the accident happened, yet it

was held by the United States Supreme Court that the case came within the federal act already mentioned, because the bridge to be repaired was habitually used in interstate commerce, as well as the other kind. In *Horton* v. *Oregon-Wash. R. & N. Co.,* 72 Wash. 503 (130 Pac. 897, 47 L. R. A. (N. S.) 8), the plaintiff decedent was in charge of a pumping station on the line of the defendant's railroad at a point where both kinds of commerce passed over the track, and it was his duty to keep the tank filled from which locomotives took water while engaged in hauling all kinds of cars destined to points within and without the state where the accident occurred. He was killed by one of the defendant's trains while returning from his work to his home. It was there decided that he was engaged in interstate commerce. In *Johnson* v. *Great Northern Ry. Co.,* 178 Fed. 643 (102 C. C. A. 89), the injured plaintiff in discharge of his duty was examining a defective coupling on an empty car which stood on the switch track waiting to be returned to another state. He was hurt by a switching engine in the yard having kicked a car against him. It was held that he was employed in interstate commerce. In *Northern Pac. Ry. Co.* v. *Maerkl,* 198 Fed. 1 (117 C. C. A. 237), a carpenter was injured while repairing a car used indiscriminately in both kinds of commerce, and it was held that the Federal Employers' Liability Act applied. In *Jones* y. *Chesapeake etc. Ry. Co.,* 149 Ky. 566 (149 S. W. 951), the plaintiff was engaged in repairing a side track of a railroad engaged in interstate commerce, and by the negligence of his fellow-servants his thumb was mashed between the ends of rails which were being laid. It was held that the case came within the national legislation on the subject. Many other cases from state and inferior federal courts might be

cited, but the doctrine established by the *Mondou Case,* 223 U. S. 1 (56 L. Ed. 327, 32 Sup. Ct. Rep. 169, 38 L. R. A. (N. S.) 44), and the *Pedersen Case,* 229 U. S. 146 (57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, Ann. Cas. 1914C, 153), is that, if the injury to the employee appreciably affects the conduct of interstate commerce by a railway carrier, it is within the purview of the federal act, and must be controlled by that statute, although the transaction in dispute may be closely connected with local traffic. We conclude, therefore, that the complaint states a case within the United States statute, and that there was testimony sufficient to be submitted to the jury in support thereof.

2, 3. The defendant assigns as error the ruling of the trial court in excluding from the consideration of the jury the defense of assumption of risk. Section 4 of the national statute reads thus:

"That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

We have already construed our state factory act and the Oregon Employers' Liability Act as having extinguished the defense of assumption of risk in cases controlled by those statutes, on the ground that they were both criminal enactments having a penalty for the violation of their injunctions, and hence that an employee cannot be presumed to have contracted to assume the risk arising, involving a violation of the law by his employer: *Hill* v. *Saugested,* 53 Or. 178 (98 Pac. 524, 22 L. R. A. (N. S.) 634); *Love* v. *Chambers Lbr. Co.,* 64 Or. 129 (129 Pac. 492); *Dorn* v.

*Clarke-Woodward Drug Co.,* 65 Or. 516 (133 Pac. 351);
*Wasiljeff* v. *Hawley Pulp & Paper Co.,* 68 Or. 487 (137
Pac. 755); *Dunn* v. *Orchard L. & T. Co.,* 68 Or. 97
(136 Pac. 872). The federal statute under considera-
tion, however, contains no feature of a criminal nature.
The remedies it creates are purely civil in their nature.
Dealing as it does with interstate commerce, it is
peculiarly with the prerogative of the national legis-
lature, and when that law-making body has spoken
upon the subject, its utterances are exclusive of all
state legislation on the same subject: *Mondou* v. *New
York etc. R. R. Co.,* 223 U. S. 1 (56 L. Ed. 327, 32 Sup.
Ct. Rep. 169, 38 L. R. A. (N. S.) 441); *Montgomery* v.
*Southern Pacific Co.,* 64 Or. 597 (131 Pac. 507, 47
L. R. A. (N. S.) 137). It has been decided in consider-
ing this act that the defense of assumption of risk is
not eliminated except in cases prescribed by the stat-
ute itself, where the injury has happened on account
of the violation of some statute designed for the pro-
tection of the employee, and further, that the protec-
tive statutes mentioned mean a federal statute: *Hor-
ton* v. *Seaboard etc. R. Co.,* 162 N. C. 424 (78 S. E.
494); *Freeman* v. *Powell* (Tex. Civ. App.), 144 S. W.
1033; *Neil* v. *Idaho & W. N. R. R.,* 22 Idaho, 74 (125
Pac. 331); *Barker* v. *Kansas City, M. & O. Ry. Co.,*
88 Kan. 767 (129 Pac. 1151, 43 L. R. A. (N. S.) 1121).

4. It is not charged in the complaint in the case at
bar that the casualty was in any way affected by a
violation of any federal statute designed for the pro-
tection of railway employees. If, therefore, it were
sufficiently pleaded, the defense of assumption of risk
would be one permissible in the case at bar. In its
answer on this subject the defendant avers the pro-
mulgation of its rules governing its employees, to the
effect that those who are careless of the safety of them-

selves will not be continued in the service; that they must not remove any of the appliances of an engine or cars for convenience in switching, endangering the safety of themselves or others; that coupling apparatus must be examined, and if out of order, they must not attempt to make coupling; that they are warned not to get on the front or rear of an engine or the end of a car as it approaches them, or to go between cars in motion to uncouple, open, close or arrange knuckles or couplers, or follow other dangerous practices.

It is further alleged on that branch of the case that the plaintiff was familiar with these rules, and that, in violation of them, he went upon the footboard of the engine and remained there while the act of coupling the engine and car together was being performed, thus assuming the risk of injury. This statement of defense is practically a repetition of the defense of contributory negligence. The defendant does not allege that the duties of the plaintiff required him to go between the cars during the process of coupling, or to ride upon the footboard, but, on the contrary, affirmatively states that those acts were in violation of the rules and terms of his employment. Assumption of risk relates to the inherent and usual hazards of an occupation as pursued with the means and appliances employed at the time. Where parties are free to contract as to the conditions and regulations under which they will prosecute an undertaking, disregard or disobedience of rules is referable to negligence, and is not properly classified under assumption of risk.

5. The defendant complains of the following instruction:

"The company must not only install an engine that is suitable for the work it is to do, but there is cast

upon the company the duty of inspection from time to time to see that the original efficiency of the apparatus is preserved. If you should find that the locomotive was originally adequate for the performance of the work that it was expected to do, but that through failure upon the part of the company to inspect the locomotive, it got out of order and out of condition, and that if the company had kept track of it they would have seen, by the exercise of this rule that I have given you, which is the rule that prevails at the common law, then the company has been negligent; otherwise it has not been negligent.''

It was not charged that the company was negligent in failing to inspect; hence it was error to instruct the jury on a subject not at issue, although in the abstract the rule of law announced may be sound: *Willis* v. *O. R. & N. Co.,* 11 Or. 257 (4 Pac. 121) ; *Knahtla* v. *O. S. L. Ry.,* 21 Or. 136 (27 Pac. 91) ; *Pearson* v. *Dryden,* 28 Or. 350 (43 Pac. 166) ; *Smith* v. *Bayer,* 46 Or. 143 (79 Pac. 497, 114 Am. St. Rep. 858) ; *Busch* v. *Robinson,* 46 Or. 539 (81 Pac. 237).

6. Throughout the instructions of the court the trial judge left it to the jury to determine whether or not the common law or the state law, generally known as the employers' liability law, should apply to the issue in question. For instance, in instruction No. 3, this language is used:

''In this law of 1910, to which I have just called your attention, there are two provisions which may or may not have a bearing upon this case, as you shall determine.''

Many other instances of like nature are found in the charge to the jury, but the one quoted is sufficient for example. As we have seen, the state legislation does not apply to the issue joined, it being controlled by the federal enactments on the subject. Secondly, it was in any event erroneous on the part of

the trial court to submit a question of law to the jury. *Schulte* v. *Pacific Paper Co.*, 67 Or. 334 (135 Pac. 527).

In short, the plaintiff stated a case under the act of Congress relating to the liability of railway carriers for negligent injury to their employees while engaged in interstate commerce, and produced evidence which the jury was entitled to consider in support of his allegation; but the trial was clouded by erroneous instructions as to the law applicable to the matter in hand and in leaving to the jury the matter of determining what legislation was applicable to the case. For these reasons the judgment is reversed. REVERSED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE RAMSEY concur.